FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 FEB 22  AM 11: 28

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: INTERDICTION OF HAROLD OTIS WRIGHT | * | CIVIL ACTION |
| HAROLD ASHER, AS SUCCESSION REPRESENTATIVE OF HAROLD OTIS WRIGHT | * | NUMBER 06-356 |
| VERSUS | | |
| A.G. EDWARDS AND SONS, INC. | * | SECTION "L" (4) |

### ORDER AND REASONS

Pending before the Court is the Plaintiff's Motion to Remand or Alternatively Motion for Contempt (Rec. Doc. 2) and the Defendant's Motion to Stay and Compel Arbitration (Rec. Doc. 3). For the following reasons, the Plaintiff's motion is DENIED and the Defendant's motion is GRANTED.

**I.   BACKGROUND**

In April 1973, as the result of a medical accident, Harold Otis Wright was rendered permanently paralyzed and incapable of caring for himself. In addition to his paralysis, Mr. Wright lost the ability to speak and had little mental capacity.

After numerous years of litigation resulting from his medical accident, Mr. Wright received a jury verdict of approximately of $1,700,000. Since neither Mr. Wright nor Mr. Wright's wife, Audrey Wright, could work, this money was the family's entire capital estate and became the family's sole means of paying for Mr. Wright's medical bills and living expenses.

___ Fee_____
___ Process_____
X  Dktd_____
/  CtRmDep_____
___ Doc. No._____

In 1982, as a result of his injuries, Mr. Wright was declared an interdict by Louisiana's Twenty-First Judicial District Court ("21st J.D.C."), and Mrs. Wright was appointed as his curatrix. As curatrix, Mrs. Wright was charged with the duties of caring for her husband's personal and financial needs. On March 17, 1982, to provide for Mr. Wright's financial needs, the court authorized Mrs. Wright to invest Mr. Wright's estate in low risk and long-term investments. In its authorization, the court ordered that no portion of Mr. Wright's capital estate be withdrawn from any of the long-range investment accounts by any financial institution without further, specific court orders. It was further ordered that all interest income derived from the long-range investments be deposited and channeled through a Custodian Account in the Central Progressive Bank. The deposited interest income would serve as Mr. and Mrs. Wright's income and means of paying for medical bills and personal expenses.

In response to this authorization, Mrs. Wright established an account with A.G. Edwards and Sons, Inc. ("A.G. Edwards") through Edwin Reardon, an investment banker with A.G. Edwards. A certified copy of the court's order was deliver to A.G. Edwards through Mr. Reardon.

In 1993, Mr. Reardon reported that the value of Mr. Wright's account was over $1,200,000. In 1993, however, A.G. Edwards allegedly began making direct deposits from the principal of Mr. Wright's long-range investments into his Custodian Account in the Central Progressive Bank. It is further alleged that A.G. Edwards did not advise Mr. Reardon or Mrs. Wright that the direct disbursement included disbursement of the principal. Moreover, it is alleged that A.G. Edwards did not code disbursements in a way that would disclose that principal was being disbursed and, as such, the monthly account statements did not disclose

2

that principal was being disbursed. Accordingly, these disbursements appeared as earnings from investments, not as a liquidation of the principal, which was precluded by the court's March 17, 1982 order.

In 1995, Mr. Reardon left A.G. Edwards and went to work for Morgan Stanley Dean Witter, Inc. ("Morgan Stanley"). Due to Mr. Reardon's relocation, A.G. Edwards disbursed $700,000, the entire principal amount remaining in Mr. Wright's long-range investment account, to Morgan Stanley and, thus, allegedly further violated the court's March 17th order.

On December 23, 2002, with no money remaining in Mr. Wright's Morgan Stanley account and no existing accounts with A.G. Edwards, Mrs. Wright filed a petition in the 21st J.D.C. against A.G. Edwards, Morgan Stanley, and Mr. Reardon asserting that they were liable to her for the losses to Mr. Wright's account. This petition was filed as part of the interdiction proceeding that was commenced in 1982. On September 23, 2003, pursuant to an arbitration clause in the account agreement between A.G. Edwards and Mrs. Wright, the court issued an order staying the action against A.G. Edwards and Morgan Stanley pending arbitration before the National Association of Securities Dealers, Inc. The claim against Mr. Reardon was not referred to arbitration and stayed active in the 21st J.D.C.

On December 31, 2003, Mrs. Wright initiated an arbitration demand against A.G. Edwards and Morgan Stanley for breaching various fiduciary and contractual duties and violating certain securities laws and court orders, including the March 17, 1982 order. This arbitration proceeding is still ongoing.

On July 26, 2005, Mr. Wright died. On November 17, 2005, Harold Asher, the succession representative of Mr. Wright's estate, filed a Motion for Contempt of Court against

A.G. Edwards. This motion was also filed as part of the interdiction proceeding that was commenced in 1982. In the motion, Mr. Asher sought an order finding A.G. Edwards in contempt of court for violating the court's March 17, 1982 order and for an award of damages in the amount of $1,230,000 plus judicial interest. The motion was served on A.G. Edwards on December 7, 2005.

On December 22, 2005, A.G. Edwards removed this action to the United States District Court for the Middle District of Louisiana. On January 26, 2006, due to improper venue, the action was transferred to this Court.

## II.   PRESENT MOTIONS

In his motion for remand, the Plaintiff contends that this action should be remanded because federal courts lack subject matter jurisdiction over state court contempt actions and because the notice of removal in this case was filed beyond 28 U.S.C. § 1446(b)'s one year time limit. As an alternative to remand, the Plaintiff moves this Court to grant its motion for contempt and an award the Plaintiff monetary damages. In opposition to the Plaintiff's remand motion, the Defendant asserts that the Plaintiff's motion is not a contempt motion, but a veiled state court petition. As such, it is subject to federal diversity jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. Furthermore, the Defendant argues that its notice of removal was timely filed under section 1446(b).

In its motion to stay and compel arbitration, the Defendant contends that this action is subject to the arbitration clause in the account agreement between it and Mrs. Wright. Conversely, the Plaintiff argues that this action—a motion for contempt—is not subject to the arbitration clause.

III.   LAW AND ANALYSIS

    A.   Motion to Remand or Alternatively Motion for Contempt

28 U.S.C. § 1441 grants federal district courts removal jurisdiction over any civil action brought in a state court which could have been brought originally in federal court. In the present case, the Defendant contends that this Court has jurisdiction over this civil action based on diversity jurisdiction. 28 U.S.C. § 1332. To effectuate a federal court's removal jurisdiction, a notice of removal must be filed within thirty days from receipt of the initial pleading setting forth the claim for relief upon which the action is based. *Id.* § 1446(b). If the action is not immediately removable, a notice of removal must be filed within thirty days of receipt of the pleading from which it may first be ascertained that the case is removable. *Id.* For actions removed on the basis of diversity jurisdiction, section 1446(b) precludes removal if the civil action is removed more than one year from commencement of the action.

First, the Plaintiff contends that federal courts lack jurisdiction over contempt proceedings arising out of alleged noncompliance with a state court order and, as such, this Court must remand this action to state court. *See* In re *Heisig*, 178 F. Supp. 270, 273 (N.D. Ill. 1959). This Court agrees with the general proposition asserted by the Plaintiff. Contempt orders are designed to vindicate the authority and dignity of a court. *Gautreau v. Gautreau*, 72 So. 2d 497, 499 (La. 1954). Accordingly, it would be an unwise policy for one court to determine whether a litigant violated another court's order. *See* In re *Marriage of Smith*, 549 F. Supp. 761, 755 (W.D. Tex. 1982). A practice allowing such determinations would allow one court to exercise control over the dignity to be afforded another court. This policy is especially true for courts operating in different judicial systems, such as the federal court system and the

Louisiana state court system. To permit otherwise would implicate federalism and comity issues and impinge on the dignity afforded state court judicial systems. *See Judice v. Vail*, 430 U.S. 327, 335 (1977).

In the present case, however, the Defendant does not disagree with the Plaintiff's contention. Instead, the Defendant asserts that the Plaintiff is not in actuality seeking a contempt order, but rather disguising his state court petition for damages in a motion for contempt's clothing.

In determining whether removal is proper, the Court must refer to the allegations contained in the Plaintiff's state court pleadings. *Keating v. Shell Chem. Co.*, 610 F.2d 328, 331 (5th Cir. 1980); *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 116-17 (5th Cir. 1979). Essentially, the Court must look at the substance of the Plaintiff's cause of action, not the form, to determine the removability issue. *L.M. Knight v. First Pyramid Life Ins. Co. of Am.*, 256 F. Supp. 32, 34 (W.D. Okla. 1966).

In his motion for contempt, the Plaintiff seeks an order holding the Defendant in contempt and finding the Defendant liable for $1,230,000. In Louisiana, "a contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." La. C.C.P. art. 221. The punishment for contempt of court is governed by La. Rev. Stat. § 13:4611. Under section 13:4611(1), the most a district court can fine a person for any form of contempt is $1,000. Furthermore, contempt orders are not designed for the benefit of private litigants. *Brunet v. Magnolia Quarterboats, Inc.*, 97-187 (La. App. 5 Cir. 3/11/98), 711 So. 2d 308, 313. Additionally, the underlying substance of the Plaintiff's claim is based on the same facts that

encompassed the Plaintiff's December 23, 2002 petition and pending arbitration proceeding. Therefore, when the Court examines the substance of the Plaintiff's motion, the Court finds that the Plaintiff has asserted a petition for damages under the guise of a motion for contempt. Considering that substance controls over form, the Plaintiff's motion is not a motion for contempt, is properly recognizable as its own distinct civil action, and is removable. Furthermore, the exercise of federal jurisdiction in this situation does not offend notions of federalism and comity.

Second, the Plaintiff contends that the Defendant's notice of removal was untimely because it was filed beyond section 1446(b)'s one year time limit. According to the Plaintiff, the motion for contempt was filed as part of the action commenced on December 23, 2002, since the motion bears the same docket number as the December 23, 2002 petition.[1] As such, the removal of the motion to contempt is barred as untimely. The Defendant, however, contends that the motion for contempt is a separate action based on an admission by Plaintiff's counsel in a August 15, 2005 letter stating that the interdiction of Mr. Wright had terminated.

Regardless of the August 15, 2005 letter, the Court finds that the motion for contempt is a separate action from the December 23, 2002 petition. Under article 397 of the Louisiana Civil Code, an interdiction terminates upon the death of the interdict. Mr. Wright died on July 26, 2005. The current motion for contempt was filed on November 17, 2005. As such, the interdiction proceeding was terminated, and the motion for contempt constituted a new civil action. Simply styling a pleading as part of a terminated proceeding does not make the

---

[1] The Court notes that the docket number for both the December 23, 2002 petition and the motion for contempt is the same docket number as the March 17, 1982 order.

pleading part of that proceeding. Therefore, since the Defendant received a copy of the motion for contempt on December 7, 2005, and filed its notice of removal on December 22, 2005, the notice of removal fell within both the thirty day and one year time limits of section 1446(b).

Third, as an alternative to its remand motion, the Plaintiff moves the Court to find the Defendant in contempt and award the Plaintiff his requested damages. Since the Court has already determined that the Plaintiff's motion is a disguised petition for damages, the Court cannot summarily award the Plaintiff damages. To do so would deprive the Defendant of proper process.

### B.   Motion to Stay and Compel Arbitration

If any suit is brought in federal court upon an issue referable to arbitration under a written agreement and the court is satisfied that the issue involved in such suit is referable to arbitration, the court shall stay the suit and refer it to arbitration upon application by one of the parties. 9 U.S.C. § 3. There is a strong federal policy favoring arbitration. *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999). Any doubts regarding the availability of arbitration must be resolved in favor of arbitration. *United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 408 (5th Cir. 1990).

On June 9, 1994, Mrs. Wright as curatrix for Mr. Wright signed an Ultra Asset Account Agreement ("the Agreement") with the Defendant. Section 5 of the Agreement stipulates that "all controversies between the undersigned and Edwards or any of Edwards' present or former officers, directors, agents or employees that may arise for any cause whatsoever, shall be determined by arbitration." Section 10 of the Agreement provides: "this Agreement, its enforcement . . . shall cover individually and collectively all accounts that the undersigned may

at any time maintain with Edwards, shall inure to the benefit of Edwards, any successor or assigns, and shall be binding upon the undersigned, the executors, administrators, successors, heirs, and assigns of the undersigned." Therefore, this agreement is binding on the Plaintiff as a successor of Mr. Wright and covers the subject matter of the underlying lawsuit. Accordingly, this action shall be stayed and referred to arbitration.

## IV.   CONCLUSION

For the foregoing reasons, the Plaintiff's Motion to Remand or Alternatively Motion for Contempt is DENIED. Moreover, the Defendant's Motion to Stay and Compel Arbitration is GRANTED.

New Orleans, Louisiana, this __15th__ day of __February__, 2006.

UNITED STATES DISTRICT JUDGE